MAVERICK-CLARKE LITHO COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14083. Promulgated December 30, 1948.

*Leroy G. Denman, Esq.*, and *W. M. Aikman, Esq.*, for the petitioner.
*J. Marvin Kelley, Esq.*, for the respondent:

OPINION.

Murdock, *Judge*: The petitioner contends that it had equity in-
vested capital of $125,000 within the meaning of section 718 (a) of
the Internal Revenue Code as a result of the transactions which took

place on November 20, 1917. It would have to show, in order to sustain that contention, that money or property was paid in for stock or that there was a distribution in stock which would be considered a distribution of earnings and profits and it would further have to show, if relying upon property paid in for stock, the basis of the property for loss to the person paying it in. The petitioner does not argue that money was paid in for stock, but it does argue that "undivided property" was paid in for stock. It cites no cases in support of its argument.

Actually no money was distributed by the corporation on November 20, 1917, and no money was paid in by the stockholders for stock. Furthermore, the corporation did not have sufficient cash at that time to pay a dividend in money and it made no effort and had no plans for obtaining money for that purpose.

The corporation did not distribute any property to the stockholders on November 20, 1917, and the stockholders did not actually pay in any property to the corporation for stock. The petitioner argues, however, that "undivided property" was paid in for stock. Apparently its reasoning is that the declaration of a dividend gave to the stockholders claims against the corporation and when they subscribed for stock they surrendered those claims. It points to various statements in the resolutions and the stock subscription agreement to support its contention that there was a declaration and distribution of an "undivided property" dividend. It seems necessary in a situation like this to look through the form of the transaction in order to find and rely upon what actually took place. *Jackson* v. *Commissioner*, 51 Fed. (2d) 650. There were but five persons involved. Their relationship is not shown, but their names indicate that they were closely related. Those five persons were stockholders and directors. All of the transactions, the resolutions at the two meetings, the action of the directors, and the agreement of the stockholders to subscribe, were but steps in an integrated and indivisible plan. At least the petitioner has failed to show the contrary. It would also appear that the five persons had no intention of having the petitioner pay any dividend in property. No dividend in property or in "undivided property" could have been paid without completely disrupting the business. It is fair to conclude from the entire record that the whole arrangement was agreed to in advance. The results were accomplished by transferring $125,000 from surplus to capital on the books and by the issuance of stock certificates. The action was a pro rata stock dividend of common on common. Cf. *Jackson* v. *Commissioner, supra; Irving* v. *United States*, 44 Fed. (2d) 246; *W. Q. Wright*, 10 B. T. A. 306, 822. Such a dividend is not considered a distribution of earnings and profits and is not taxable to the stockholders. Sec. 115 (h), I. R. C. *Eisner* v. *Macomber*, 252 U. S. 189; *Helvering* v. *Griffiths*, 318 U. S.

371. The determination of the Commissioner that this transaction did not affect equity invested capital is thus supported by the evidence. At least the evidence does not show that it was wrong.

Section 718 (a) (2) provides that property paid in for stock is to be included in equity invested capital in an amount equal to its basis for determining loss upon sale or exchange. There is a complete failure of proof as to the basis for loss of any property or "undivided property" in the hands of anyone, and that circumstance alone would be fatal to the petitioner's contention.

The petitioner makes some argument based upon the law of Texas which prohibits the issuance of stock except for money paid, labor done, or property actually received. The petitioner argues from this law that a stock dividend was not permitted and the procedure followed was designed to comply with the laws of Texas. The question here is the effect of the transaction for the purpose of Federal taxes. It is proper to look through form to substance in determining that question, and it is not necessary to determine exactly what the transaction would have been under the laws of Texas.

Section 23 (k) allows the deduction of a reasonable addition to a reserve for bad debts. The petitioner claimed deductions of additions to a reserve for bad debts in the amount of $2,926.69 for 1942 and $2,155.51 for 1943. The Commissioner disallowed $2,359.15 of the deduction claimed for 1942 and he added to income $2,339.16 for 1943, although the deduction claimed by the petitioner for that year was only $2,155.51. He obviously erred in adding back to income more than the petitioner took as a deduction. The evidence has been carefully examined and the conclusion has been reached that the Commissioner did not err in disallowing $2,359.15 of the deduction claimed for 1942 and in disallowing the entire deduction claimed for 1943. The reserve was ample without those additions. The history of this reserve, including the charges made for bad debts, the subsequent collections on those debts, and the additional amounts added to the reserve, is convincing evidence that the amounts in controversy were not necessary as additions to the reserve at the end of 1942 and at the end of 1943.

*Decision will be entered under Rule 50.*